(March 11, 1889.)

## MINTY v. UNION PACIFIC RAILWAY COMPANY.

### [21 Pac. 660.]

MASTER AND SERVANT—RISKS.—The traveling auditor of a railroad company, whose duties are to travel on the company's cars from stations on its roads and audit accounts, is a servant of the company's, and assumes the ordinary risks incident to the employment.

SAME—ACCIDENT—PRESUMPTION.—Where such servant is injured in an accident resulting in the derailment of the car on which he is riding, it will be presumed, until the contrary is shown, that the company was not in fault in providing suitable instrumentalities for the business, and had no notice of any defect or other causes of the accident.

WHAT PARTY INJURED MUST SHOW.—Before the servant can recover, he must show that the injury did not arise from a defect obvious to himself, or which, by the exercise of ordinary care, he might have known.

HAZARD OF BUSINESS.—He must show it was not from hazard incident to the business.

CHARGES TO THE JURY.—Where the judge charged the jury that, if the car was overturned by reason of any defect in said car, or of the track on which it was running, this is in itself presumptive evidence of neglect on the part of the defendant, and the burden is then on the defendant to show that there has been no negligence whatever, *held*, that as between master and servants such presumption of negligence does not so arise, and the charge was erroneous.

SAME.—The court also charged, while the burden of proof is on the plaintiff to show negligence of the defendant, yet it is sufficient for that purpose, *prima facie*, if he show he suffered injury without his fault, while lawfully traveling in the car of the defendant, and that the cause of that injury was probably the negligence of the defendant, *held*, to be error, and ·that whether it is so or not is in the knowledge of the defendant, and the defendant must then show what the real cause of the injury was, and if the defendant does not choose to give the explanation, the jury will be authorized to find that the real cause of injury was the negligence of the defendant in the particular case specified in the complaint, *held*, that this was error.

(Syllabus by the court.)

APPEAL from District Court, Oneida County.

The facts appear in the following statement by BERRY, J.:

On the twelfth day of January, 1884, the plaintiff was in the employ of the defendant as traveling auditor, his duties extending over the entire lines of the company west of Cheyenne, including the entire Utah and Northern road, and continued in such employment until August 17, 1886. On the seventh day of January, 1886, while on duty, and on a train, traveling from station to station on the Utah and Northern road, and in the course of such employment as traveling auditor, the car in which the plaintiff was riding was derailed and the plaintiff was injured. The case was tried by a jury before Honorable Case Broderick, district judge, at the May term, 1888, in Oneida county. The jury returned a verdict for the plaintiff, and assessed his damages at $4,000. Judgment was entered and docketed the same day. A bill of exceptions was duly made by the defendant, and a case containing the evidence, bill of exceptions as agreed upon by the respective parties, was settled and allowed, upon which the defendant moved for a new trial, which was refused, and the defendant appeals from both the judgment and the order denying a new trial. In the complaint the cause of action is stated as follows: "That on or about the first day of November, 1885, and from that time continuously until on or about the first day of April, 1886, the defendant negligently and carelessly permitted the said line of railroad, known as the 'Utah and Northern Railway,' to become ruinous and out of repair, and so negligently and carelessly permitted the rails upon said railway to become worn out and weak and insufficient to support the trains run upon the same, and particularly did negligently and carelessly permit said rails to become so worn out and weak and insufficient on the seventh day of January, 1886, at a point in Montana territory, near Monida station, that the said rails there became broken on the passage over them of the train on which the plaintiff was that day riding, as hereinafter stated; that on the said seventh day of January, 1886, this plaintiff was traveling in the discharge of his duties as traveling auditor upon the regular passenger train of the defendant; that the defendant, while knowing the ruinous condition of its said track, was nevertheless running both passenger and freight trains upon it; that while plaintiff was rightfully riding said train, it came to a

point near Monida aforesaid, where said rails were worn out, and weak, and insufficient to support the trains, as above stated, when, by reason of the said worn out, weak, and insufficient condition of said rails, upon said track so negligently and carelessly permitted to be and remain there, one of said rails became broken, and the car in which plaintiff was riding was thereby and by reason of the aforesaid ruinous condition of the track at that place run off the track," etc., whereby the plaintiff was injured, etc., to his damage, etc.; "that plaintiff was at all times before he received said injuries ignorant of the ruinous condition at said place, and defendant had then, and for a long time immediately prior thereto, notice and full knowledge of said ruinous condition of said railroad; wherefore the plaintiff demands judgment." The answer puts in issue each allegation of the complaint, but avers that plaintiff "was at the time an employee of the defendant, to wit, its traveling auditor upon the said Utah and Northern Railway and other lines of railway owned or operated by defendant; that it was the duty of the plaintiff to travel from one station to another on the line of said railway, and audit the accounts of the station agents of defendant on said railway; that by his contract of employment . . . . plaintiff was to receive a certain price and compensation per month, and was to be transported from place to place on said railway, free of charge, as his duties as such employee required; that in pursuance of said contract the defendant issued to plaintiff an employee's time-pass or free ticket; that said pass had indorsed thereon a condition to the effect that the person accepting the same should assume all the risks of accidents, etc.; that the plaintiff had knowledge of such indorsement, accepted the terms, and was bound by it." Other facts of the case will appear in the opinion of the court.

P. L. Williams and W. H. Savidge, for Appellant.

The evidence must establish the negligence alleged to be the cause of the injury, or it fails to justify the verdict. (*Batterson v. Railway Co.,* 49 Mich. 184, 13 N. W. 508; *Morse v. Railway Co.,* 30 Minn. 465, 16 N. W. 358; *Murray v. Railroad Co.,* 3 N. Mex. 337, 9 Pac. 369.) The burden of proof of the negligence alleged is upon the plaintiff. (Wood on Master

and Servant, sec. 382; Shearman and Redfield on Negligence, secs, 222, 223; *Rose v. Railroad Co.,* 58 N. Y. 221, 222; *Wright v. Railroad Co.,* 25 N. Y. 562; *Railroad Co. v. Ledbetter,* 34 Kan. 326, 8 Pac. 411.) And proof of the accident merely, or the injury received, is not sufficient to establish negligence even *prima facie.* (Wood on Master and Servant, sec. 419; Wharton on Negligence, sec. 421; *Nytoglycerin Case,* 15 Wall. 524; *Lockwood v. Railway Co.,* 55 Wis. 50, 12 N. W. 401; *Railroad Co. v. Scott,* 64 Tex. 549.) Evidence relating to accidents and repairs or replacements, occurring and made at points remote from, and long after the happening of, the particular accident causing the injury complained of, is not admissible. (*Morse v. Railroad Co.,* 30 Minn. 465, 16 N. W. 358; *Reed v. Railroad Co.,* 45 N. Y. 574; *Dougan v. Transportation Co.,* 56 N. Y. 1; *Baird v. Daly,* 68 N. Y. 547; *Hudson v. Railroad Co.,* 59 Iowa, 581, 44 Am. Rep. 692, and note, 13 N. W. 735; *Hipsley v. Railway Co.,* 27 Am. & Eng. R. R. Cas. 287; *Railroad Co. v. Fox,* 11 Bush, 495; Pierce on Railroads, 293.)

Smith & Smith and R. D. Winters, for Respondent.

Derailment of a car makes out a *prima facie* case of negligence. (*Cleveland etc. R. R. Co. v. Newell,* 104 Ind. 264, 54 Am. Rep. 312, 3 N. E. 836; *Railroad Co. v. Rainbolt,* 99 Ind. 551; *Hipsley v. Railway Co.,* 27 Am. & Eng. R. R. Cas. 287, and note.) The allegation of the derailment of the cars, and the consequent injury to plaintiff, were all he needed to prove. (*Railway Co. v. Jones,* 108 Ind. 551, 9 N. E. 476; Shearman and Redfield on Negligence, secs. 280, 280a; *Edgerton v. Railway Co.,* 39 N. Y. 227; *Fairchild v. Stage Co.,* 13 Cal. 605; Thompson on Carriers, 181, 355; *Fitch v. Railway Co.,* 45 Mo. 322.)

BERRY, J. (After Stating the Facts.)—The specific wrong by the defendant of which the plaintiff complains, after a general statement relating to the track, is that "in particular [the defendant] did negligently and carelessly permit said rails to become so worn out and weak and insufficient, on the seventh day of January, 1886, at a point in Montana territory, near Monida station, that the rails there became broken, on the passage over them of the train in which the plaintiff was that day riding"; that on that day "the defendant, well knowing the

condition of its said track," ran its cars upon it, and, at a "point near Monida aforesaid," where the rails were worn out, and too weak to support the train, and by reason of such weak and worn-out condition of said rails "there" or at that point the car in which the plaintiff was riding "was thereby and by reason of the said ruinous condition of the track at that place run off the track," and the plaintiff was injured. No defect in the cars or other machinery is alleged, nor is there any mis-conduct on the part of the persons in charge of the train either alleged or shown; but the sole grievance is that the track at that point was ruinous and weak, and the defendant, knowing it, still ran its trains; that this weakness of the track threw off the car, and caused the injury. There is no direct evidence that a rail was broken. No one seems to have seen a broken rail. Nor is there any evidence of special defect in the track at that point. A careful review of the evidence would indicate that the track, where the accident occurred, was as good, if not better, than at other parts of the road; but the issue is tendered and joined as to a defect in the track, and that such defect was the cause of the accident. To sustain the position of the plaintiff as to the weak and ruinous condition of the track at this time and place, the following questions were asked by the plaintiff of Timothy Farrel, the conductor of the wrecked train, and evidence given under objection, duly made by the defendant, as to each question and answer. "Q. What caused this wreck? A. I don't hardly know what caused the wreck. I suppose it was a broken rail. Q. Was the track laid with new iron or steel shortly after the accident? A. Not for some time. I believe it was some time late in the following fall. Q. What, if any, was the difference in the new rails, that were laid then—what is the difference in the size of the new rails and the old ones? A. There is considerable difference in the size and heft both. Q. Which is the heaviest? A. The last iron laid was considerably heavier than the iron it replaced. Q. Can you give the comparative difference? Is one twice as heavy as the other? A. I don't think it is twice as large. Q. Have you observed any broken rails along there since the new track was laid? A. No, sir; not to my personal knowledge. Q. Was not one of the causes of the track being rough (with-

out reference to any particular place) because the ends of the rails were battered down? A. I expect it was. Q. Have you had your train wrecked at any other time since this accident—the accident in which the plaintiff was injured? A. Yes, sir. Q. How many times? A. Twice that I remember. Q. On the same road? A. Yes, sir. Q. How near to this place did they happen? A. One was about fifty miles, and the other about eight miles, from it. Q. How long after this wreck? A. One was about six months, and the other about a year; one happened before, and the other after, this wreck. Q. Was the last one before or after this iron was laid? A. It was after." The defendant moved to strike out the answers of the witness as to the two wrecks before and after the accident in question as immaterial and irrelevant, which motion was refused, and the defendant duly excepted. We think the testimony was improper, and should have been rejected. These two wrecks were too remote, both in time and place, from the wreck in question; and besides, it was not shown from what cause they occurred. They have no proximate relation to the condition of the track at the time and place of accident. No fact was stated by this witness as a ground for his opinion that it was a broken rail that caused the wreck, and we have no intimation as to the grounds of his belief. That there was a broken rail, and that the wreck was caused by it, were facts to be found by the jury; and the opinion of a witness, not based on competent facts, should not have been given to them. Aside from this "supposition" of the witness Farrel, who was himself injured at the accident, too much to take notice, there is no evidence that a rail was broken at all. Nor was the fact that in the fall of the same year, but more than eight months after the accident, the whole road was re-ironed, and heavier rails placed upon it, competent evidence of the cause of this accident. What the motive was is not shown by the act itself, or otherwise. There were many reasons, each of which is equally presumable, which may have induced this re-ironing; each of which reasons may have been wholly disconnected with any weak or ruinous condition of the track at the time and place of accident. Even granting that the road as a whole, eight or more months after the seventh day of January, 1886, required

strengthening in view of the uses it was to be put to, still those defects may have been at great distances from the place of the accident, or from causes not at all existing at that place. Any possible relation of this evidence is too remote in character, time, and place from the acts in question. (*Morse·v. Railroad Co.,* 30 Minn. 465, 16 N. W. 358.) This evidence may not have influenced the jury, but we cannot see that it did not.

A more serious error was in giving the first charge to the jury at the request of the plaintiff, that "if the car was overturned by reason of any defect in said car, or of the track on which it was running, . . . . this is in itself presumptive evidence of negligence on the part of the defendant; and the burden is on the defendant to show that there has been no negligence whatever, and that the overturning has resulted from a cause which reasonable care and foresight could not prevent."

1. It was not any defect in the car that was in issue. Suppose the car had been derailed by a broken axle, that would raise no presumption that the track was ruinous and weak, or that the defendant had knowledge of its condition.

2. Nor was it "any defect" which the track might have which the jury were to consider, but only the defects charged. It was in evidence that the weather was very cold at that time and place—the thermometer was twenty-eight degrees below zero; also that broken rails are more frequent when the weather is cold. But no issue has been made upon a defect so caused; nor of the defendant's knowledge or want of knowledge of such defect. Yet the charge is that such or any other defect in the track is presumptive evidence of negligence of the defendant in what constituted "the real cause of the accident," whatever it was, and lays on it the burden of showing that there was no negligence whatever. That is very unreasonable. It is as though the jury were told the same thing in case an enemy had drawn the spikes, thereby causing the car to be derailed. It is impossible to see how such a fact, even if the jury thought the defendant careless in such a case, could be presumptive evidence of the defendant's negligence in letting its track become weak and ruinous.

The second charge was also equally erroneous. The court charged "that the burden of proof is upon the plaintiff to show

the negligence of the defendant, but it is sufficient for that purpose, *prima facie,* if he show he suffered injury without his fault, while lawfully traveling in the car of defendant; and that the cause of that injury was probably the negligence of the defendant; and that whether it is so or not is in the knowledge of defendant, for then the defendant must show what the real cause of the injury was; and if the defendant does not choose to give the explanation, the jury would be authorized to find that the real cause of the injury was the negligence of the defendant in the particular case specified in the complaint." This is wrong for many reasons. It tells the jury that whatever may have been the cause of the accident, whether as alleged in the complaint, or from any other cause, however remote, if the defendant was "probably" negligent in it, then the jury, without any further proof, may find against the defendant on the facts in issue. To show that the plaintiff was injured by a broken axle; that such axle, on inspection, appeared much worn, and that the defendant probably knew it; or that the engineer was probably intoxicated, and so caused the accident—certainly could raise no presumption as to the condition of the track, nor of the company's knowledge of that condition. The company may be equally ignorant with the plaintiff as to what the jury may think is "probably" the "real cause" of an accident, or of what is in fact "the real cause." But this instruction is to the effect that, whether the company has or has not any knowledge, if still it is probably negligent in something else, which might have been the cause of the accident, it must nevertheless show what the real cause was, or the case as charged will stand confessed. No rule of law, we think, will sustain that position. (Wood on Master and Servant, sec. 419; Wharton on Negligence, sec. 421; *Railroad Co. v. Scott,* 64 Tex. 549; note to *Railroad Co. v. Brice,* 1 S. W. 483, 28 Am. & Eng. R. R. Cas. 551; *Ely v. Railway Co.,* 77 Mo. 34.)

A point is made by the defendant that the plaintiff at the time of the accident was riding on a pass, which had conditions that in case of injury to the holder would protect the defendant from liability. The effect of such a provision upon a pass is not, under the evidence, a question in this case. The pass was apparently adopted by both parties as a convenient way to carry

out a contract of employment.   The terms of that pass were no
part of that agreement.   Its object was only to enable the plain-
tiff, by its means, to pass over the road.   The agreement was
that the plaintiff should serve the defendant as its traveling
auditor; go from station to station on this and other lines of
road, upon the cars of defendant, without charge to the plain-
tiff; for which he was to have an agreed compensation.   With
or without the pass he was to do, and would have done, so far
as appears, precisely what he was doing at the time of the acci-
dent.   He was a servant of the company, on duty in the de-
fendant's business, and riding upon and under his contract of
employment, but of which contract neither the pass nor its
conditions were a part.   The relations between the parties were
those of master and servant, and the only rule of the liability
of the defendant to the plaintiff is the rule of the liability of
the employer to the employee.   That rule is "that when a ser-
vant enters into the employ of another he assumes all the risks
ordinarily incident to the business.   He is presumed to have
contracted with reference to all the hazards and risks ordinarily
incident to the employment; and he cannot recover for injuries
resulting from such ordinary risks."   (Wood on Master and
Servant, sec. 326; *Noyes v. Smith,* 28 Vt. 59, 65 Am. Dec. 222.)
The servant seeking to recover for an injury takes the burden
upon himself of establishing negligence on the part of the mas-
ter, and due care on his own part; and he is met with two pre-
sumptions, both of which he must overcome, in order to entitle
him to a recovery: 1. That the master discharged his duty
to him by providing suitable instrumentalities for the business;
·and this involves something more than proof of the mere fact
that the injury resulted from a defect in those appliances.   The
burden is imposed on him of showing that the master had notice
of the defect, or that, in the exercise of ordinary care, which he
is bound to observe, he would have known it.   2. When this is
established, he is met by another presumption, the force of
which he must overcome, and that is that he assumes all the
ordinary hazards of the business.   To overcome this presump-
tion he must show that the injury did not arise from an obvious
defect in the instrumentalities of the business, or from hazard
incident to the business, or from causes known by him to exist,

or which he might have known by the exercise of ordinary care. Failing to overcome these presumptions, he cannot recover. (Wood on Master and Servant, sec. 382, and cases cited.) The jury in this case should have been so instructed, instead of being permitted to act upon the instruction given to them by the court. There was no evidence in the case to overcome either of these presumptions; and for this, as well as for the other reasons above stated, the judgment must be reversed. Judgment reversed, and a new trial ordered.