(November 22, 1901.)

## ZIENKE v. NORTHERN PACIFIC RAILWAY COMPANY.
### [66 Pac. 828.]

Sufficiency of Evidence to Support Verdict and Judgment.—In an action for personal damages, where the evidence wholly fails to support the verdict of a jury and judgment of the court entered thereon, it must be reversed.

Damages — Responsibility of Employer—Fellow-servant.—Where the evidence shows that the acts complained of, resulting in the injury, were attributable to a fellow-servant, the employer cannot be held to respond in damages for such injury.

(Syllabus by the court.)

APPEAL from District Court, Kootenai County.

H. M. Stephens and John M. Bunn, for Appellant.

Authorities on assumption of risk: *Drake v. Union Pac. Ry. Co.,* 2 Idaho, 487, 21 Pac. 560; *Mintu v. Union Pac. Ry. Co.,* 2 Idaho, 471, 21 Pac. 660; *Bullivant v. City of Spokane,* 14 Wash. 577, 45 Pac. 42; *Brunell v. Southern Pac. Ry. Co.,* 34 Or. 256, 56 Pac. 129 (this case is very similar to the case at bar); *Clark v. Missouri Pac. Ry. Co.,* 48 Kan. 654, 29 Pac. 1138; *Long v. Coronado R. Co.,* 96 Cal. 269, 31 Pac. 170; *Rush v. Missouri Pac. Ry. Co.,* 36 Kan. 129, 12 Pac. 582; *Jennings v. Tacoma Ry. & M. Co.,* 7 Wash. 275, 34 Pac. 937. Authorities on incompetency of fellow-servants: Plaintiff must show negligence in employing, or that his conduct had been so careless as to charge company with knowledge. Mere evidence of reputation is not evidence of incompetency: *McCharles v. Horn Silver M. Co.,* 10 Utah, 470, 37 Pac. 733. Authorities on contradictory instructions: *Giffen v. City of Lewiston,* 6 Idaho, 231, 55 Pac. 545. Authority on foreman a fellow-servant: *Snyder v. Viola Mining Co.,* 3 Idaho, 28, 26 Pac. 127; *Brunell v. Southern Pac. Ry. Co.,* 34 Or. 256, 56 Pac. 129; *Willis v. Oregon Ry. & Nav. Co.,* 11 Or. 257, 4 Pac. 125; *Noyes v. Wood,* 102 Cal. 389, 36 Pac. 766; *Donnelly v. San Francisco Bridge Co.,* 117 Cal. 417, 49 Pac. 559.

Charles L. Heitman, for Respondent.

In the case of *Baltimore etc. R. Co. v. Henthorne,* 73 Fed. 634, 19 C. C. A. 623, the court say: "In an action against a railroad company for damages for personal injuries sustained by an employee of the company in an accident, which some of the evidence tends to show was caused by the drunken condition of the engineer of the train, it is entirely competent to prove the engineer's general reputation for drunkenness and consequent incompetency, for the purpose of showing the railroad company was negligent in retaining him in its employ." (*Wabash Railway Co. v. McDaniels,* 107 U. S. 454, 2 Sup. Ct. Rep. 932.) "Specifications in a statement on motion for a new trial of the insufficiency of the evidence to justify the verdict

must state the particulars in which the evidence is claimed to
be insufficient, and a mere general statement that the evidence
is insufficient to justify a verdict should be disregarded."
(*Kyle v. Craig,* 125 Cal. 108, 57 Pac. 791; *Demolera v.
Martin,* 120 Cal. 544, 52 Pac. 825; *Dawson v. Schloss,* 93 Cal.
194, 29 Pac. 31; *Taylor v. Bell,* 128 Cal. 306, 60 Pac. 853;
*Haight v. Tryon,* 112 Cal. 4, 44 Pac. 318.)

STOCKSLAGER, J.—This case is here for review from a
judgment of the district court of Kootenai county. The case
was tried by a jury, and on January 25, 1900, a verdict was
returned in favor of the plaintiff for the sum of $1,995. The
pleadings are voluminous, and will be referred to here in an
abbreviated form, but sufficiently to show the conditions upon
which the case was tried. The amended complaint avers:
That the defendant is a corporation existing under and by
virtue of the laws of Wisconsin, and engaged in operating a
line of railroad from St. Paul to the Pacific Ocean, and
traverses the entire width of Kootenai county, this state.
That the plaintiff is a carpenter by trade, and has been engaged
in such business the past thirty years. That from about the
1st of July, 1896, to the 16th of September, 1896, both in-
clusive, he was employed by the defendant as a carpenter upon
its bridges or trestles crossing the Lake Pond d'Oreille, in
said county, at and for certain hire, and was required, as a part
of his duties, to handle lumber with which such bridge or
trestle was being built by said defendant; also to unload such
lumber from the push car, which was used in bringing said
lumber over the tracks to said bridge or trestle. That said
bridge or trestle is narrow, and crossed by a single track, and
there were no platforms on the side, except at long distances
apart on said bridge or trestle, which is more than one mile
in length, and its entire length crosses water of great depth.
That whilst plaintiff was engaged in such work he was under
the direction and control of foremen employed by the defend-
ant, whose orders and instructions it was his duty to obey, to
wit, one McAuliffe and one John Holstroem, who were, as
plaintiff is informed and believes, vice-principals of defendant,

and as he is informed and believes were employed and author-
ized by the defendant as such foremen and vice-principals.
That on or about the sixteenth day of September, 1896, he was
at work as such carpenter in defendant's behalf on its said
bridge or trestle, and was engaged in handling lumber with
which repairs were being made on said bridge or trestle in the
following manner, to wit: "Plaintiff was unloading lumber
from a push-car belonging to defendant, which was standing
on the single track crossing the said bridge or trestle. The
plaintiff stood at one end of the said push-car and the other
employee at the further end of said push-car, throwing lumber
from said push-car on the side of the said bridge or trestle.
That while so engaged, and while plaintiff's back, from the
necessity of his work, was turned toward the village of Sand-
point, and while plaintiff held in his hands and against his
right leg a heavy piece of lumber, about thirty feet long, the
said John Holstroem came from the direction of Sandpoint
on a hand-car belonging to defendant, over the single track
of said bridge or trestle, at the time when the said push-car
which plaintiff was unloading was also standing on the single
track upon said bridge or trestle. That the plaintiff, from his
position and his work in unloading said push-car, could not
see or hear the hand-car upon which said John Holstroem
was riding over said track, and while said plaintiff was so en-
gaged in the position aforesaid the said John Holstroem drove
the said hand-car, loaded with tools, in, over, and upon said
single track, without warning to said plaintiff, in a negligent,
careless, and unskillful manner, so that the said loaded hand-
car was driven against and upon the plaintiff with such force
and violence as to press and squeeze plaintiff's right leg at the
knee between said hand-car and said heavy piece of lumber
then held by plaintiff in the manner before mentioned with
such momentum and weight as to wound and bruise plaintiff's
right leg in a most painful and permanent manner. That, as
a result of such injury, the plaintiff was treated by a physician
or surgeon, and was confined to his bed continuously for about
two weeks, and was under treatment for said injury in a hos-
pital for more than five weeks, and from time to time was con-

fined to his bed for about fourteen weeks. That the plaintiff, by reason of said injury, was rendered permanently lame in his right leg, and has grave apprehensions that said leg will eventually have to be amputated. That plaintiff, by reason of said injury, constantly suffers great pain. That he is afflicted with sleeplessness by reason of said pain and suffering, and is unable to perform a full day's labor to support himself and family by his labor as he did prior to the date of said injury." Then follows an allegation that it was the duty of the defendant to furnish for the protection and safety of plaintiff good, safe, and secure places in which to work upon said bridge or trestle, and to provide that timely warning or notice should be given plaintiff while at work, as aforesaid, of the approach of hand-cars and push-cars moving along, over, and upon defendant's single track, or over said bridge or trestle. Avers that defendant conducted its operations in this behalf in so negligent, careless, and unskillful a manner that, although this said bridge or trestle was about one and one-half miles in length, and crossed deep water at a height of from twenty to thirty feet almost its entire length, no sidetrack or other arrangement was constructed or provided upon which a push-car or hand-car could be driven; that his duty required him to keep constantly at work repairing said bridge or trestle; that the defendant conducted itself so negligently, carelessly, and unskillfully that it provided for no notice, warning, or signal to be given of the approach of hand-cars or push-cars; that it was the duty of the defendant, in selecting its servants, employees, or agents, to exercise diligence and care, and only employ such persons as were safe, capable and trustworthy; and avers that said John Holstroem, who drove the hand-car by which plaintiff was injured, was addicted to strong drink and drunkenness to such a degree as to make him unfit, incapable, and unworthy for the position he held under his employment by the defendant, and that such incapability, etc., existed at the time of the injury to plaintiff, and had existed for a long time prior thereto, and were well known to defendant at the time, and for a long time prior thereto, or could, by proper care and diligence, have been known to defendant, and the defendant

did not exercise due care and diligence in employing said Holstroem; that plaintiff, at the time of said injury, had been working under said Holstroem for only a short time, and was ignorant of Holstroem's unfitness as aforesaid. Avers that up to the date of the injury he was a strong and healthy man, able to do daily work without inconvenience, and that by reason of said injury he is now, and since the date of the injury has been, incapacitated from working successfully as he could prior to said injury. Avers that said injury was caused without fault or negligence on his part, and that by reason of said injury, caused by the negligence of defendant, he has been damaged, etc. To this complaint a demurrer was filed; also a motion to strike from the complaint certain portions thereof as being irrelevant and immaterial; and on the seventh day of April, 1899, an order was made and entered overruling the motions as well as the demurrer, and on the twelfth day of April, 1899, the defendant filed its answer to the complaint. The answer admits that defendant is a corporation, but denies that it was the owner of or that it operated said line of railroad, or any part thereof, prior to 1896; admits that plaintiff was at the time of the commencement of this action a carpenter by trade; denies that he was employed by defendant prior to September 1, 1896; admits that from September 1, 1896, to September 16, 1896, plaintiff was employed by defendant as a carpenter upon its bridge or trestle as alleged, and that for a certain hire and reward agreed upon plaintiff was required and accustomed, as part of his duties, to handle lumber under and by direction of defendant, to unload lumber from the push-car, etc.; denies that the bridge or trestle is narrow, and has no platform on the sides, except at long distances apart; alleges said bridge or trestle is of proper and sufficient width for bridges or trestles of this character, and used for purposes for which this one was used; admits that it is more than one mile in length; denies that it crosses water of great depth its entire length or at all; alleges that the water that said bridge or trestle crosses is not of great depth at any point, and for a greater part of the distance the water is shallow; alleges that at the time of

the commencement of this suit, and for thirty years previous. thereto, plaintiff was a bridge carpenter, and accustomed to working on bridges and trestles similar to the one in question, and that at the time of going upon said bridge or trestle at the time and place mentioned he well knew the dangers connected with such work; denies that plaintiff, while working as such carpenter in behalf of defendant, was under the direction or control of foremen employed by defendant whose orders or instructions it was plaintiff's duty to obey, and denies that McAuliffe and John Holstroem, or either of them, were vice-principals, or were employed or authorized by the defendant as vice-principals or foremen, except as hereinafter set forth; alleges that at the time and place mentioned, and while working as such carpenter for defendant, plaintiff was under the direction of, and it was his duty to obey, the orders and instructions of M. McAuliffe, who was the foreman of said gang, and the only foreman thereof, at said time and place. Then follows an allegation that defendant has no information or belief as to the employment of plaintiff at the time of the alleged injury, and denies such employment as alleged in the complaint, or the injury alleged to have been sustained at such time and place; alleges that, if the plaintiff went upon the bridge of trestle as alleged in his complaint, he was well aware and knew of all the dangers, if there were any, to which he was made subject, or should have known of such dangers, if there were any; that the plaintiff, if he went to work as alleged, did so of his own free will and choice; that all of the dangers then and there existing were perfectly apparent, or should have been so to plaintiff; that, if it be true that plaintiff was injured in the manner set forth in his complaint, or in any manner, the injury was caused by the act of a fellow-servant, or by dangers the risks of which said plaintiff assumed; denies that it was the duty of defendant to provide or furnish for the protection or safety of plaintiff good, safe, or secure places in which to work on said bridge or trestle, or that it was its duty to provide timely warning of the approach of push-cars, hand-cars or cars of any description, or

that any of its agents, servants, or employees conducted its operations in this behalf; denies that no sidetracks or other arrangements were constructed or provided upon which a push-car or hand-car could be driven, or that plaintiff's duty required him to keep constantly at work in repairing bridges, etc.; admits that it was its duty, in selecting employees, agents, and servants, to exercise diligence and care in employing only such persons as were safe, capable, and trustworthy; alleges that it used all due and necessary diligence in the employment and retention therein in the employment of said John Holstroem as its servant; denies that said Holstroem was so addicted to strong drink or drunkenness as to make him unfit or unworthy for the position he held at the time of the alleged injury, or that it existed for a long time prior thereto; alleges that, if plaintiff was injured as he alleges in his complaint, it was not the fault of the defendant.

Plaintiff, Zienke, testified that he was working for defendant in September, 1896, "and on the sixteenth of said month, on the day of the accident, and at the time, John Holstroem was with the hand-car, when I looked around. I guess he was in the act of getting off the hand-car, and he said, 'Are you hurt?' I said: 'Yes. I think I do feel it.' He said, 'Well, I couldn't help it.' I said, 'Why?' 'I could not help it. The brake did not work very good.' McAuliffe, foreman of our gang, came up then. I considered John Holstroem, the way he acted always, that he was above me—second foreman. He worked as a carpenter there. McAuliffe came up there and asked me if I was hurt. He says, 'It is carelessness.' I went back to work in two weeks on the same bridge gang. Mr. McAuliffe was not there. Was working for the Northern Pacific Railroad Co. I worked there one day, when I was laid off—was told I was not wanted any more. Mr. Holstroem laid me off—this same John Holstroem who was driving the hand-car when I was hurt. A short time before I was hurt, I had been working under John Holstroem as my boss." On cross-examination he said: "In September, 1896, he was an experienced man, and knew all the dangers of being a carpenter, and being in high places, and working among men, whose tools are liable

to be dropped. Had worked as bridge carpenter on the Great Northern Railroad and other railroads in the east considerably before that time. Mr. McAuliffe was the foreman of that gang, and John Holstroem was, but Mr. McAuliffe was above him. Holstroem was foreman occasionally in McAuliffe's place. He took McAuliffe's place once in a while when McAuliffe was gone. He never took McAuliffe's place when McAuliffe was present. McAuliffe was the only foreman of the gang that day—the day of the accident. Except John Holstroem, McAuliffe was the only foreman of the gang the day of the accident. Holstroem was a workman—a bridge carpenter. If I had seen the car coming, I could have stepped to one side, there was plenty of room. Holstroem did not employ me. McAuliffe gave me orders when he was there, and nobody else that I know of." J. M. Bradley testified that he knew Holstroem, and his general reputation for drunkenness in Sandpoint; that it was bad. Also testified that it was bad at Rathdrum and Spokane. Benjamin F. Butler also testified that the reputation of Holstroem for drunkenness at Sandpoint, in September, 1896, was bad. Jackson Watts testifies to a similar state of facts as to Holstroem's reputation for drunkenness. E. A. Shera testified as to the condition of plaintiff's leg in June. The leg was bandaged, and was inflamed. Says plaintiff could not stand carpenter work. After the introduction of this testimony the plaintiff rested his case, whereupon defendant made the following motion: "The defendant, the Northern Pacific Railroad Company (the plaintiff herein having rested), now moves this honorable court to dismiss this action, and grant a nonsuit herein, upon the ground and for the reason that the plaintiff has not proved a case sufficient to go to the jury." This motion was overruled by the court, and thereafter the defendant called Mr. McAuliffe, who testified he was foreman of the gang, and that no other person gave orders. "That Holstroem and Zienke were receiving the same pay at the time of the accident. Holstroem has never had authority to discharge or employ men. Holstroem has worked for me for the last nine years, and was an old hand when I came to the road. He is a good all-round man, and

has always been considered careful. I never knew anyone to be hurt where he was. I considered Mr. Zienke an inferior hand on any work. Don't think he ever worked on bridge work until he went to work for me. I would not place him in a dangerous position in doing work. Our work is dangerous in many respects. I never knew Holstroem to go on a bridge to work while under the influence of liquor." A number of witnesses testified that they had worked from one to fifteen years with Holstroem, and that he was a very careful man; never knew him to be intoxicated while at work; that he usually did the most dangerous work, as he was considered competent and careful. Holstroem himself testified that he had been engaged in bridge work and other work of a dangerous character for the past nineteen years, and that an accident had never happened a fellow-workman by reason of his carelessness or negligence in all that time up to the time of this accident, if this one is traceable to him; that he never at any time discharged the plaintiff, and only worked in the capacity of a carpenter.

With this statement of the pleadings and the evidence, should the motion for a nonsuit have been sustained? If so, it is wholly unnecessary for us to pass upon a number of questions presented by the record. The plaintiff testifies that he was an experienced bridgeman, having been engaged in that class of work for a number of years; that he was familiar with the dangers connected with the class of work in which he was engaged at the time of the accident. He testifies that the accident was attributable to the carelessness and negligence of one John Holstroem in pushing a hand-car against his leg with such force as to cause the injury, and that said Holstroem was an employee of the defendant in a capacity superior to him. On cross-examination he testifies that one McAuliffe was the foreman of the gang at work on the bridge or trestle at the time of the accident, and was present at the time, giving orders; that said McAuliffe employed him to work for defendant in the capacity of a bridge carpenter; that he was assisting in unloading the push-car, when said Holstroem pushed the hand-car against his leg with sufficient force to cause the injury; that Holstroem was also a bridge carpenter. Three witnesses

testified that Holstroem was addicted to the use of intoxicating liquors, and that they had frequently seen him intoxicated at Sandpoint, Spokane, and Rathdrum. There is no pretense, however, that he was under the influence of liquor at the time of the accident, or that his habits of intoxication were in any way responsible for it, or that he was in the habit of using intoxicating liquors while at work. It is urged by respondent's counsel that it was the duty of the defendant to only employ such workmen as were reliable and safe in the work in which they were engaged. This is undoubtedly true, but no one testifies that they ever knew Holstroem to be under the influence of liquor when engaged in work for the defendant. It is also urged by counsel for respondent that Holstroem and Zienke, the plaintiff, were not fellow-servants, and hence the rule applying to fellow-servants cannot be invoked in this case. We cannot agree with this contention. We think the testimony of plaintiff plainly shows that they were fellow-servants, each employed in the capacity of bridge carpenter by Foreman McAuliffe. Plaintiff testified that Holstroem stated to him at the time of the accident that the brake on the hand-car was defective. A careful inspection of plaintiff's amended complaint fails to disclose any allegation of defective machinery, or a defective brake on the hand-car; plaintiff basing his right to recover on the carelessness and negligence of Holstroem, who he alleges was incompetent, careless, and negligent in handling the hand-car, and in the discharge of his duties in same capacity over him in the employ of the defendant.

The first question, Was Holstroem a fellow-servant with plaintiff, or did he occupy a position in the employ of the company in any way superior to the plaintiff? We think the evidence is conclusive that they were fellow-servants employed as bridge carpenters by defendant, and we need not look beyond the testimony of the plaintiff to arrive at this conclusion. If they were fellow-servants, can the plaintiff recover in this action? In *Donnelly v. Bridge Co.*, 117 Cal. 417, 49 Pac. 559, the court says that the superintendent and the injured workman, as to the act causing the injury, were fellow-servants. In *Brunell v. Railroad Co.*, 34 Or. 256, 56 Pac. 129, the su-

preme court of Oregon, in a well-considered opinion by Mr. Justice Moore, says (syllabus): "A railroad company is not bound to keep a signal to warn the men on a hand-car of the situation of the section men on the track." That the plaintiff assumed all ordinary risks incident to the work in which he was engaged, we think there can be no serious question. (See *Drake v. Railway Co.,* 2 Idaho, 487, 21 Pac. 560.) The syllabus says: "Where a fireman upon a locomotive engine in discharge of his duty, with full knowledge of the nature and extent of the dangers of the service he is engaged in, or having the means of being informed of such facts and conditions by the exercise of ordinary care, voluntarily assumes such risks, and is thereby injured, and the employer is guilty of no laches or misconduct unknown, to the servant, or which, with ordinary care he might have known, he cannot recover for such injury." The learned judge in whose court this case was tried below recognized this rule in his instructions, but they seem to have been entirely ignored by the jury. On this question see *Minty v. Railroad Co.,* 2 Idaho, 471, 21 Pac. 660, 4 L. R. A. 409; *Brunell v. Railroad Co.,* 34 Or. 256, 56 Pac. 129.

The defendant assigns forty-four errors occurring on the trial of this cause, but, in our view of the case, we deem it unnecessary to pass upon a large number of them.

With the pleadings as we find them, the testimony as appears from the record, and the law as shown by the authorities above cited, can this judgment stand? We think not. The judgment of the lower court and the order denying defendant a new trial are reversed, with costs to appellant.

Quarles, C. J., and Sullivan, J., concur.