[No. 34442. Department One.   May 1, 1958.]

GARLAND PLEMMONS, *Respondent*, v. LEO C. ANTLES *et al.*, *Appellants.*[1]

*Sam R. Sumner* and *Sam R. Sumner, Jr.,* for appellants.

*Murray & Hanna,* for respondent.

MALLERY, J.—The plaintiff worked in the defendants' apple orchard during the picking season of 1955. After it was over, he was put to work collecting orchard props. They were hauled on a flat-bed trailer drawn by a shortened Ford

[1] Reported in 324 P. (2d) 823.

truck, commonly called a "puddle jumper." It had a seat for the helper beside the driver, which appeared to have been made by pouring concrete four or five inches deep into a mold, similar to a nail keg. The seat was covered by a pad, but had no back or railing to take hold of. It was not fastened down and was prevented from sliding by slats nailed on the floor boards of the truck in the form of a "V". This equipment would be driven between the apple tree rows and the props piled on the trailer. It would then be driven across the highway to the prop pile and unloaded.

On the morning in question, November 8, 1955, the defendants' foreman asked the plaintiff to drive the puddle jumper, but he declined, upon the ground that he could not do so. Thereupon, the foreman instructed one Bagwell to drive it, with the plaintiff attending to help load and unload the props.

At about one-thirty in the afternoon, a trailer load was completed close to the highway, about a quarter of a mile from the usual point of crossing to the prop pile. Rather than turn around in the orchard and drive to the crossing, Bagwell decided to enter the highway where they were and proceed down it to the prop pile. The plaintiff walked across the highway to watch for traffic. He signaled when it was clear. Bagwell drove across the highway, turned left, and pulled over on the shoulder of the highway where the plaintiff was standing.

The plaintiff testified:

"A. Well, he pulled up even with me and stopped, and I walked in and turned around and sat down. And I had picked my feet up off the ground, took all my weight off my feet, when he started. It threw me out of balance. I hadn't had time to swing my feet onto the puddle jumper, and it threw me out of balance, and I knew I was going to fall, so I tried to push myself and jump clear of the wheel, but it caught both heels and threw me down and ran up, all the way from my feet up all the way over my shoulder and against the side of my head."

This action for plaintiff's injuries was tried to a jury, which returned a verdict for him from which defendants appeal.

The defense to the action was predicated upon the fellow-servant doctrine, and a number of assignments of error are predicated upon its applicability to the case. *Buss v. Wachsmith*, 190 Wash. 673, 70 P. (2d) 417, is precisely in point and sets out the fellow-servant doctrine as applied in this state.

In that case, the plaintiff Buss, two other men, and the employers' son were engaged in hauling the employers' fruit to a freight car, using the employers' truck. There was no room for Buss on the truck seat, so he was sitting on the rear of the truck with his legs dangling, while riding back from the freight car. The son was driving the truck, and he negligently made a left turn, resulting in a collision in which Buss was injured. In holding that the son was a vice-principal and not a fellow servant, we said:

"We have said that fellow workmen may be fellow servants in regard to some particular part of the employment and that, as to other parts of the employment, the fellow workman may stand in the relation of vice-principal to the others, depending entirely upon what is being done at the time. . . .

"While, in the case before us, it is not alleged in the complaint that the son exercised any authority in directing the work of the other members of the crew, he was in exclusive control of the truck on which the men were riding. They had no voice in directing him nor any control over his movements. He was operating the truck as his father's *alter ego* in the performance of a nondelegable duty."

This holding did not represent the weight of authority elsewhere at the time the opinion was handed down. The dissent pointed out the lack of authority of the driver over the employee riding with him, and correctly stated the rule prevailing elsewhere as follows: [p. 692.]

"Whether a negligent employee is, at a given time, a vice-principal, is determined by the *nature* of the functions which, as a matter of fact, he is discharging at the time when the injury is inflicted. Wholly aside from the specific act

which the negligent employee may be performing, he must, in order to stand in the place of a vice-principal, have the *power* of control or supervision over his co-employee. 39 C. J. 574, § 691; R. C. L. 748, § 218. As stated in *Allend v. Spokane Falls & N. R. Co.*, 21 Wash. 324 (338), 58 Pac. 244 (248), 'the power of superintendence and control is the test.' This does not mean merely the control by an employee over an instrumentality, as the majority seems to indicate, but rather the power to direct and supervise the workmen and the work. The driver of the truck was, of course, in control of the truck in that he was operating it. But he had no more control over his co-employees than they had over him."

However, the dissent did not prevail, and we held that control of the vehicle alone was sufficient to make the fellow-servant doctrine inapplicable. This modification of the common law was a proper exercise of the judicial function. See *Petersen v. Department of Labor & Industries*, 40 Wn. (2d) 635, 245 P. (2d) 1161.

■ The Washington rule as to the fellow-servant doctrine, as promulgated in the *Buss* case, is that the defense is not available to an employer if the servant, whose negligence caused the injury, had the exclusive control of the instrumentality by which the injury was inflicted.

■ It is undisputed in the testimony that Bagwell was in exclusive control of the puddle jumper. The trial court did not err in holding him to be a vice-principal, and refusing to instruct the jury on the fellow-servant doctrine.

■ Appellants assign error to certain instructions submitted to the jury, on the ground that they were a comment on the evidence. This was not within the scope of the exception to the instructions taken in the trial court. Thus, the instructions became the law of the case. Rule of Pleading, Practice and Procedure 10, 34A Wn. (2d) 75, as amended, effective October 24, 1955. *Rank v. Alaska Steamship Co.*, 45 Wn. (2d) 337, 274 P. (2d) 583.

■ Appellants also assign error to the trial court's failure to submit certain of their proposed instructions to the jury. The only reason given to the trial court was ". . . for the fact that they fit the evidence and they fit the law."

This is not sufficiently specific to apprise the trial court of the points of law or questions of fact in dispute. Rule of Pleading, Practice and Procedure 10, *supra*. *Rank v. Alaska Steamship Co.*, *supra*.

The judgment is affirmed.

HILL, C. J., FINLEY, OTT, and HUNTER, JJ., concur.

June 16, 1958. Petition for rehearing denied.