538 P.2d 1170

Julio LOPEZ, Sr., Individually and as parent of Julio Lopez, Jr., an infant and Julio Lopez, Jr., Individually, Plaintiff-Appellants,

v.

Rulon ALLEN, Defendant-Respondent.

No. 11660.

Supreme Court of Idaho.

Aug. 6, 1975.

R. M. Whittier, Pocatello, for plaintiff-appellants.

Hugh C. Maguire, Jr., Pocatello, for defendant-respondent.

McFADDEN, Justice.

Plaintiffs-appellants Julio Lopez, Sr., and his son, Julio Lopez, Jr., instituted this action against defendant-respondent, Rulon Allen, to recover damages for personal injuries sustained by Julio Lopez, Jr., in an accident on Allen's farm while he was in Allen's employ. At trial, the jury returned a special verdict finding that Julio Lopez, Jr., and Allen each were negligent in the amount of fifty percent. Judgment was entered in accordance with the verdict. The plaintiffs appeal from that judgment. We reverse and remand for a new trial.

Julio Lopez, Jr. (hereinafter Julio), who at the time of the accident was 15 years of age, was employed with other members of his family by Allen to assist in the harvest of Allen's potato crop. For two and one-half days Julio worked on the potato harvester in the fields; then, for a day and a half prior to the accident, he worked in the potato cellar where the potatoes were stored on the farm. While he was working in the cellar on September 29, 1972, he was injured when his leg was pinned be-

tween a potato piler and a tractor drawn scraper unit.

The potatoes were moved from the field to the cellar by truck. At the cellar the trucks were unloaded by means of a conveyor belt system; the potatoes were moved by a conveyor called a "pup" from the truck to the piler which piled the potatoes in the cellar. Several employees, including Julio, would remove dirt and other debris from the potatoes as they moved down the "pup". Julio, his brother, Epifanio, and his sister, Lorie, were assigned the additional task of removing dirt and debris from the cellar after each truck had been unloaded. Julio and Lorie would rake the debris into piles and then Epifanio, who at the time was 13 years of age, would remove the debris from the cellar with a tractor mounted scraper. The scraper unit was a blade mounted on the rear of the tractor which could be raised or lowered by means of the tractor's hydraulic system.

The accident occurred when Epifanio was backing the tractor into position to move a pile of debris. Epifanio backed the tractor in position; as he was attempting to shift into forward gear so that the tractor could move the debris, the tractor moved backwards a distance of seven or ten feet pinning Julio's leg between the scraper and the piler resulting in his injuries. Julio testified that he was raking debris from underneath the piler and that he had his back to the tractor when the accident occurred.

The first issue raised by this appeal is whether the trial court erred when it instructed the jury in accordance with certain provisions of the Employers' Liability Act (I.C. § 44-1401 et seq.). The act provides:

"Every employer of labor in or about a * * * *warehouse,* * * * shall be liable to his employee or servant for a personal injury received by such servant or employee in the service or business of the master or employer within this state when such employee or servant was at the time of the injury in the exercise of due care and diligence in the following cases:" I.C. § 44-1401. (Emphasis added.)

The act then enumerated specific instances where the employer is liable to his employee for personal injuries. The court, finding that the cellar was a warehouse within the purview of the act, instructed the jury in accordance with the act on the issues of assumption of the risk (I.C. § 44-1401(6)), contributory negligence (I.C. § 44-1402), and the fellow servant doctrine (I.C. § 44-1403). Giving of these instructions was assigned as error.

The respondent submits that the legal definition of a warehouse turns upon the use to which a facility is put; he reasons that since the cellar is used for the storing of potatoes the cellar should be considered to be a warehouse. However, we reject this rationale.

The Employers' Liability Act must be considered in conjunction with the Workmen's Compensation Act so as to avoid, if possible, any conflicts in the application of the acts to the employee's right to recover for accidental injuries. See, as to the statutory construction: *Sampson v. Layton,* 86 Idaho 453, 387 P.2d 883 (1963); 73 Am.Jur.Statutes § 186 (1974). The Workmen's Compensation Act provides a statutory scheme for compensating the working man for on the job injuries without regard to fault. I.C. § 72-201. Employment in agricultural pursuits is exempted from coverage under the act unless the employer elects coverage. I.C. §§ 72-212(8), 72-213. When considering the question of whether the injured party or the employer was engaged in "agricultural pursuits" at the time of the injury, this court has looked to the general character of the work performed rather than to the specific task at which the employee was injured or to the place of injury.

"In *Mundell v. Swedund,* this court recognized 'the rule that the occupation or

pursuit as a whole is the controlling factor, in determining whether an employee is engaged as a farm laborer or in an agricultural pursuit, rather than the immediate task being performed or the place of performance of such task.'" *Bartlett v. Darrah,* 76 Idaho 460, 462, 285 P.2d 138, 139 (1955), quoting *Mundell v. Swedlund,* 59 Idaho 29, 36, 80 P. 2d 13, 16 (1938).

See, *Hubble v. Perrault,* 78 Idaho 448, 304 P.2d 1092 (1956). This same reasoning is applicable to determine whether an employer is engaged in an occupation within the purview of the Employers' Liability Act. Otherwise, a conflict in the application of the two acts could result.[1] The applicability of the Employers' Liability Act to a specific cause of action arising from a personal injury must be determined by reference to the general character of the employer's business and the work which the employee was hired to perform rather than to the specific task being performed or the place of performance.

■ Under the facts of this case, there is no question but that Julio was employed in the harvest of crops produced on Allen's farm. There was no evidence that Allen was storing crops for others in the cellar or that the cellar was used for any purpose other than storing Allen's potato crop. Julio's cause of action arose not from an injury received in a warehousing operation, but from an injury received in a farming operation. Thus, it is the conclusion of this court that Julio's cause of action is not within the purview of the Employers' Liability Act.

A ruling by this court that the trial court erred in finding that Allen's potato cellar was a warehouse within the provisions of the Employers' Liability Act is not

sufficient by itself to sustain a reversal. If the instructions given were a correct statement of the relevant common law doctrines, then we cannot say that the trial court's ruling, by itself, prejudiced the substantial rights of the appellants. See *Rindlisbaker v. Wilson,* 95 Idaho 752, 519 P.2d 421 (1974). Thus, we must examine the instructions given on assumption of risk, contributory negligence, and the fellow servant doctrine.

■ Regarding assumption of the risk, the trial court instructed the jury that an employee, by his employment, shall be presumed to have assented to the necessary risks of the employment. The instruction then defined what constituted the necessary risks of employment. This instruction is defective in that it made no provision for the jury to consider Julio's knowledge of the risks which he was presumed to assume. This court has held that "the defense of assumption of the risk in an employer-employee relationship requires that the employer establish that his employee knew the danger involved, and that the employee understood and appreciated the risk therefrom and voluntarily exposed himself thereto". *Meissner v. Smith,* 94 Idaho 563, 567, 494 P.2d 567, 571 (1972), quoting *Otto v. Mell,* 94 Idaho 109, 110, 482 P.2d 84, 85 (1971). *Accord, Johnson v. Stanger,* 95 Idaho 408, 510 P.2d 303 (1973). The instruction given directed the jury to presume that Julio understood and appreciated the risks of his employment as well as to presume that he voluntarily exposed himself to the risks of his employment. It was error to give this instruction under the facts of this case.

■ The jury was also instructed pursuant to I.C. § 44–1402 that "[t]he employer shall not be liable to an employee if the

---

1. If this court were to hold that Allen's potato cellar was a warehouse, then we would be forced to conclude that Allen was in the warehousing business and so Julio probably was entitled to recover under the Workmen's Compensation Act. This conclusion would be in conflict with the act's provision exempting

employers engaged in agricultural pursuits and the case law construing that provision. I.C. § 72–212(8). See, *Backsen v. Blauser,* 95 Idaho 811, 520 P.2d 858 (1974); *Manning v. Win Her Stables, Inc.,* 91 Idaho 549, 428 P.2d 55 (1967).

employee knew of the defect or negligence causing the injury, or by exercise of reasonable care could have known of the defect or negligence. causing the .injury and failed within a reasonable time to give notice thereof to the employer, or to some person superior to himself engaged in the service or employment of the master or employer who has entrusted to him some general superintendence, unless the employer or such superior already knew of such defect or negligence". Case law is well settled that the defense of contributory negligence involves two elements:

" * * * an injured person's knowledge of the physical characteristics of the offending instrumentality or condition does not of itself constitute contributory negligence. It is the appreciation of, or the opportunity to appreciate the peril in an instrumentality or condition, rather than the knowledge of the physical characteristics that bars a plaintiff from recovery for negligence." [2] *Hooten v. City of Burley*, 70 Idaho 369, 377, 219 P.2d 651, 654 (1950).

*Accord,* 53 Am.Jur.2d Master and Servant § 242 (1970); 56 C.J.S. Master and Servant § 432 (1948). The instruction given failed to instruct the jury that the employer must establish that Julio recognized, or in the exercise of due care, should have recognized the peril involved in working near a tractor. Thus, it was error to give this instruction.

■ The trial court instructed the jury on the fellow servant doctrine pursuant to I.C. § 44–1403 that the employer was not liable for the injury to the employee where the injury was caused by the incompetence of a fellow employee and the incompetency was known to the injured employee and the injured employee failed to give notice to his employer of such incompetency. This instruction states the basic precept of the fellow servant doctrine. 53 Am.Jur.2d Master & Servant § 307 (1970). See, *Zienke v. Northern Pac. Ry. Co.*, 8 Idaho

54, 66 P. 828 (1901); *Johnson v. Stanger*, 95 Idaho 408, 510 P.2d 303 (1973). The court failed to instruct the jury as to what was necessary to establish a fellow servant relationship and did not instruct the jury as to the possible distinction between the fellow servant's and the employer's negligence. See, *Johnson v. Stanger, supra*; 53 Am.Jur.2d Master & Servant, § 299 (1970).

However, we do not have to consider the inadequacies of the instruction given on the fellow servant doctrine as we adopt an exception to the fellow servant doctrine promulgated by the Supreme Court of Washington.

" * * * The Washington rule as to the fellow-servant doctrine * * * is that the defense is not available to an employer if the servant, whose negligence caused the injury, had the exclusive control of the instrumentality by which the injury was inflicted." *Plemmons v. Antles*, 52 Wash.2d 269, 324 P. 2d 823, 825 (1958).

*Accord, Bennett v. Messick*, 76 Wash.2d 474, 457 P.2d 609 (1969); *Buss v. Wachsmith*, 190 Wash. 673, 70 P.2d 417 (1937). See, *Johnson v. Stanger, supra*. In the case at bar, Epifanio had the exclusive control of the tractor and the tractor was the instrumentality by which the injury was inflicted; thus, under the facts of this case and the exception to the fellow servant rule, the instruction on the fellow servant doctrine should not have been given.

We must reverse the judgment upon the basis of the errors in the jury instructions delineated above. The case is remanded for a new trial. Because we remand for a new trial, it is incumbent upon this court to discuss certain other assignments of error. I.C. § 1–205.

Appellants assign as error the admission into evidence of testimony regarding an experiment performed with the tractor by Allen and a witness who was qualified as an expert on tractor mechanics. The basic thrust of their argument is that the condi-

---

**2.** By statute, the bar to recovery of contributory negligence has been removed. I.C. § 6–801.

tions of the experiment were not substantially similar to the conditions of the accident in which Julio was injured.

Testimony presented by the plaintiffs raised an issue as to whether the tractor had a tendency to creep when the hand operated clutch was disengaged. Epifanio, who was operating the tractor, and another witness testified that when the clutch was disengaged preliminary to shifting the transmission from reverse to a forward gear the tractor had a tendency to move. One week prior to trial and twenty months after the accident Allen and the witness qualified as an expert mechanic conducted an experiment on the tractor in the potato cellar at the approximate location of the accident. The mechanic adjusted the clutch pulley brake and then Allen and the mechanic experimented with the tractor to determine if the tractor had a tendency to creep. They both testified that the tractor did not creep when the clutch was disengaged while the transmission was shifted from reverse to a forward gear.

■ This court has ruled that "evidence of an extrajudicial experiment will be excluded unless the conditions under which the experiment was conducted are shown to be substantially similar to those existing at the time the accident occurred." *Hansen v. Howard O. Miller*, 93 Idaho 314, 318, 460 P.2d 739, 743 (1969). The evidence of such an experiment is admissible in the discretion of the trial court if it is determined that the conditions are sufficiently similar so the evidence will assist and not mislead the jury. *Hansen v. Howard O. Miller, Inc., supra.* If the conditions are substantially similar, then the differences in conditions go to the weight of the evidence and not to its admissibility. *Hansen v. Howard O. Miller, Inc., supra.*

Here, the record discloses that the experiment was conducted in the same location in the potato cellar. However, a serious question is presented as to whether the lapse of time between the date of the accident and the time of the experiment was so long as to effect the validity of the experiment. The tractor had been used during this period of time, but to what extent was not fully developed from the record; however the record does disclose adjustments were made on the clutch during the experiment. Nor was any issue presented as to the dissimilarity in the physical capabilities of a thirteen year old youth as compared to an adult admittedly qualified as a tractor expert. As was pointed out in *Stuchbery v. Harper*, 87 Idaho 12, 390 P.2d 303 (1964), if the trial court determines that the experimental conditions are sufficiently similar so that the evidence will not mislead, but will assist the jury in an intelligent understanding of the issues, the experimental evidence should be admitted. But the converse of such statement is just as true, i. e., if the conditions are not sufficiently similar so that the evidence would mislead the jury, then it should not be admitted. Upon retrial the trial court is directed to give due consideration to the admissibility of the testimony regarding the experiment in light of the evidence presented.

■ The appellants submit that the trial court erred by striking from the record a reference to Allen's insurance coverage. Specifically, the appellant argues that it was error to strike the following answer given by Julio Lopez, Sr.

"Q. He [Allen] never did say anything to you about the accident?

A. The only thing he [Allen] said was he was sorry about what happened and not to worry, that his insurance was supposed to take care of the bill."

Defense counsel's objection to this statement was sustained and the trial court instructed the jury to disregard the answer.

In most circumstances, references to liability insurance are not admissible as the reference would not be relevant to the issues of the case. McCormick, Evidence (2d ed.) § 201 (1972). However, this is not an ironclad rule and there are certain exceptions. If the admission of a party

bearing on negligence or damages includes a reference to the fact of insurance coverage which cannot be severed without substantially lessening the evidential value of the admission, then the reference to insurance would be admissible in the context of the admission. McCormick, supra, p. 480. The answer given sheds no light upon the issue of negligence other than the implications which could be drawn from his statement that his insurance would probably pay the hospital bill. The possible prejudicial impact of informing the jury that Allen had insurance coverage far exceeded any probative value of the statement. The trial court did not abuse its discretion by striking the statement from the record. See, *Barry v. Arrow Trans. Co.*, 83 Idaho 41, 358 P.2d 1041 (1960); *Lallatin v. Terry*, 81 Idaho 238, 340 P.2d 112 (1959); *Crossler v. Safeway Stores, Inc.*, 51 Idaho 413, 6 P.2d 151 (1931).

Judgment reversed and remanded for a new trial; costs to appellants.

McQUADE, C. J., and DONALDSON, SHEPARD and BAKES, JJ., concur.

BAKES, Justice (concurring specially):

The Employers' Liability Act, I.C. § 44–1401 *et seq.*, was enacted by the legislature in 1909 and has remained intact without amendment. When Idaho first enacted workmen's compensation laws in 1917, most of the coverage of § 44–1401 *et seq.*, was impliedly repealed because it was covered by the Workmen's Compensation Act. Consequently, there has been very little application or judicial construction of the Employers' Liability Act.

The majority having concluded, and correctly so, that defendant respondent Allen was not operating a "warehouse" within the meaning of I.C. § 44–1401 of the act, and it appearing that the activities of the respondent do not come within any of the other categories of the act, then none of the act's other provisions concerning assumption of the risk (I.C. § 44–1401(6)), contributory negligence, (I.C. § 44–1402),

or the fellow-servant rule (I.C. § 44–1403) are applicable since those subsequent sections specifically provide that, "The master or employer shall not be liable under any of the provisions of section 44–1401 . . . ." I.C. §§ 44–1402, 44–1403. Thus, this Court having concluded that the defendant was not within the provisions of the Employers' Liability Act, none of those statutory defenses were applicable, and the case should be tried on general common law principles.

That conclusion raises the issue of whether or not there is such a thing as a common law fellow-servant rule in Idaho in the absence of a cause of action based upon the Employers' Liability Act. The majority assumes that there is, and willingly engrafts upon it the exception promulgated by the Washington Supreme Court in *Plemmons v. Antles*, 52 Wash.2d 269, 324 P.2d 823 (1958), which provides that if the instrumentality by which the injury is inflicted is under the exclusive control of the negligent employee, then the fellow-servant doctrine is not applicable. The rationale of the Washington cases "is based on the theory that the exclusive control of the vehicle which creates the danger is a nondelegable duty and remains the responsibility of the master." *Bennett v. Messick*, 76 Wash.2d 474, 457 P.2d 609 (1969), at 610. This exception enlarged the existing common law exception to the fellow-servant doctrine which denied application of the rule where the negligent employee was in a position of authority or supervision over the injured employee. *Buss v. Wachsmith*, 190 Wash. 673, 70 P.2d 417 (1937); *see* Am.Jur.2d, Master and Servant, § 332 (1970). In both instances the negligent employee stands as a "vice principal" rather than a fellow-servant, and his negligence is thus imputed to the employer.

The exception engrafted on to the fellow-servant rule by the Washington court really raises the basic question of what place the fellow-servant doctrine has in our present day system of jurisprudence. While this Court on one occasion did deny

relief to an injured employee because of the fellow-servant doctrine, *Zienke v. Northern Pacific RR Co.,* 8 Idaho 54, 66 P. 828 (1901), in subsequent cases the Court has upheld factual findings by the jury that the negligent employee and the injured employee were not fellow-servants. *Johnson v. Stanger,* 95 Idaho 408, 510 P.2d 303 (1973); *Brayman v. Russell & Pugh Lumber Co.,* 31 Idaho 140, 169 P. 932 (1917). With the advent of the Workmen's Compensation Act, which eliminates any cause of action in tort in most situations where the fellow-servant rule would otherwise be applicable, and in view of the exception carved out by the Washington court which the majority of this Court has now accepted, there appears to be very little if anything left of the old common law fellow-servant rule in this state.

An analysis of the language of the fellow-servant rule as set out in I.C. § 44–1403 sheds little light on the legislative policy regarding negligence of a fellow employee. That section excuses the employer from liability only if the injury is caused "by the incompetency of a coemployee." Nowhere in that section is negligence or intentional conduct even mentioned. If the word "incompetency" is used in its usual context, i. e., mental incompetency, that section is really inapposite to the problem now before the Court on the question of whether or not an employer will be liable for injury to an employee caused by the negligence of a co-employee.

Since I.C. § 44–1403 provides no policy justification for the fellow-servant doctrine, and since the fellow-servant doctrine is obviously inconsistent with the recent trends in the law of negligence which have, among other things, eliminated the defenses of sovereign immunity, spousal immunity and contributory negligence, substituting comparative negligence therefor, this Court should expressly reject the fellow-servant doctrine as a common law principle in the state of Idaho and allow the negligence of a co-employee to be imputed to the employer under general agen-cy principles. The fellow-servant rule, which is really a doctrine of employer immunity, is a philosophy of another era and has no place in our present day jurisprudence.

Regarding the experiment with the tractor which is discussed at length in the majority opinion, I am of the opinion that the circumstances were too dissimilar to make that a valid experiment and on retrial would direct the trial judge to refuse that evidence.