A. L. BENNETT, *Respondent,* v. FRANK MESSICK *et al., Defendants,* MORRISON FRUIT COMPANY, *Appellant.*\*

*Robert R. Redman* and *Gavin, Robinson, Kendrick, Redman & Mays,* for appellant.

*Dean C. Smith* (of *Smith & Smith*), for respondent.

McGOVERN, J.—This is an action to recover damages for personal injuries incurred by plaintiff during the course of his employment. Defendant Morrison Fruit Company appeals from the judgment entered upon a jury verdict in favor of plaintiff.

September 23, 1964, plaintiff was employed as a fruit picker by defendant Morrison Fruit Company; defendant

\*Reported in 457 P.2d 609.

Frank Messick operated a forklift tractor for the same employer, and it was his responsibility to transport picking bins about the orchard for the convenience of the fruit pickers.

Evidence for the plaintiff supported the proposition that he and two other workers were standing between two rows of trees and were engaged in a general conversation when they saw the tractor approaching from the east. Believing they might be standing in the tractor's lane of travel, they left the area and took up a position between two other rows of trees. Those trees ran in an opposite or north-south direction. When the tractor was about 7 feet to the north of them, it suddenly made a sharp turn to the left, struck the plaintiff and caused the injuries complained of. It was the testimony of plaintiff and his witnesses that defendant Messick was intoxicated and driving the tractor that day at an unusually high rate of speed.

Defendant Messick, on the other hand, claimed to have had but two bottles of beer, one at 8 a.m. and the other at 10 a.m. He admitted that the fruit pickers were angry with him that afternoon because he was not keeping up with them, but he said he drove the tractor no faster than 5 or 6 miles per hour. He claimed to have entered the passageway within which the accident occurred at a considerable distance to the north, and that he first saw the plaintiff when he was still 50 feet away. He said that plaintiff Bennett looked at the approaching tractor when it was more than 20 feet away. He thought that Mr. Bennett would change his position, and it was too late for defendant to stop the tractor when he realized that the accident was going to happen.

■ Appellant's 16 assignments of error are developed within three broad categories, the first of which is that the Morrison Fruit Company should have been dismissed as a matter of law under application of the fellow-servant rule. That doctrine generally provides nonliability for an employer whose employee, while acting within the scope of his employment, is injured solely by the negligence of a

fellow servant. *Buss v. Wachsmith,* 190 Wash. 673, 70 P.2d 417 (1937).

Although we follow the rule, we have grafted an exception upon it. We explained that exception in *Buss* and repeated it in *Plemmons v. Antles,* 52 Wn. 2d 269, 324 P.2d 823 (1958). We said that we will not extend the bar to recovery when the servant whose negligence causes the injury has the exclusive control of the instrumentality by which the injury is inflicted. The reasoning behind that exception is based on the theory that the exclusive control of the vehicle which creates the danger is a nondelegable duty and remains the responsibility of the master. As far as the operation of the instrumentality is concerned, the operator stands in the shoes of the master and is considered a vice-principal, not a fellow servant.

In *Buss,* the negligent employee was in exclusive control of the truck on which the other employees were riding. Although it was not claimed that the driver exercised any authority over those other employees; nonetheless we held that the driver operated the truck as the alter ego of the employer in the performance of a nondelegable duty, and the claim of the bar was not available.

In *Plemmons,* the negligent employee was also in exclusive control of a truck. We again said that control of the vehicle was alone sufficient to make the fellow-servant doctrine not applicable.

Here, likewise, defendant Messick was in exclusive control of the forklift tractor and was performing his duties as a vice-principal of the appellant Morrison Fruit Company. He was not a fellow servant of the plaintiff as far as the tractor operation was concerned. The trial court properly refused to instruct the jury on the fellow-servant doctrine.

█ It is next said that the trial court should have refused plaintiff's instruction on last clear chance. The instruction as given required a plaintiff's verdict if the jury found the last efficient cause of the accident to be defendant Messick's failure to take necessary steps to avoid the accident when he could have done so. The basis for the

argument is appellant's insistence that no version of the facts could sustain that finding, and that if there was a last clear chance, then it was the plaintiff who had the chance and not the defendant. Appellant also argues that plaintiff had as much of a last clear chance as did defendant Messick and that the doctrine was not therefore applicable.

The trial court effectively disposed of that argument. Its memorandum opinion pointed out that from the testimony the jury was entitled to accept that part of defendants' case which indicated that plaintiff saw the tractor bearing down on him when it was 20 feet away, yet failed to give it the right of way to which he knew it was entitled. Thus, plaintiff's negligence under that version of the evidence continued right up to the time of the accident. Equally entitled to belief was defendant Messick's testimony that he had plaintiff in sight for a distance of at least 20 feet, was traveling only 5 or 6 miles per hour, was aware of the braking capabilities of the tractor, could observe the plaintiff looking in another direction, did not take evasive action, did not brake the vehicle and ran over the plaintiff. Whether defendant Messick thought the plaintiff was going to step aside and allow the machine to pass was not the controlling factor. The jury was entitled to find that the circumstances were such that Mr. Messick should have realized the plaintiff's position of peril, should have appreciated the danger, that he had the capability and opportunity to avoid the accident and should have taken the steps necessary to do so. That version of facts, supported as it was by the evidence and proper inferences, would sustain a verdict against defendants under the doctrine of last clear chance. *See Bellah v. Brown*, 71 Wn.2d 603, 430 P.2d 542 (1967), and *Flagg v. Vander Yacht*, 174 Wash. 521, 24 P.2d 1063 (1933).

Appellant's argument that plaintiff had an equal last clear chance to avoid the accident is also without merit. It avoids the possibility that the jury could have found under the evidence that, although plaintiff may have been negligent in standing where he was, nonetheless he did not

realize his position of peril because he was not watching the tractor as it approached. Plaintiff said that he last saw the tractor "When it was right on me." If he was not aware of the danger until it was too late to do anything about it, then he did not have the last clear chance.

Appellant next says that the trial court should not have instructed the jury on the matter of permanent injury or aggravation of damage to plaintiff's ankle. Appellant states that the testimony showed that plaintiff's ankle had been injured some time prior to the accident in question, that a dormant arthritic condition existed as a result of that earlier injury, but that Dr. Bocek was unable to state with any degree of medical probability what percentage of plaintiff's present disability was attributable to the tractor injury. Under that evidence, appellant contends that a jury award for permanent ankle injury must have been based on pure speculation and conjecture and warranted a new trial. We do not agree.

The earlier injury referred to was one suffered by plaintiff as a child while playing basketball approximately 40 years earlier. The evidence showed that the injury had healed normally and that plaintiff suffered no pain or disability in the ankle thereafter or before the tractor accident. It was said, however, that a degenerative arthritic process was occurring in the left ankle joint. Dr. Bocek testified that the second injury brought on the pain and limitation of motion within the ankle because it aggravated the dormant arthritic condition. He said that without the tractor injury superimposed on the earlier injury, the chances were better than 50-50 that plaintiff would never have had a medical problem with the ankle. He also stated that plaintiff's ankle disability was fixed and permanent.

 The rule is that when a latent condition itself does not cause pain, suffering or a disability, but that condition plus an injury brings on pain or disability by aggravating the preexisting condition and making it active, then the injury, and not the dormant condition, is the proximate cause of the pain and disability. Thus, the party at fault is

held for the entire damage as the direct result of the accident. 22 Am. Jur. 2d *Damages* § 123 (1965). *Also see Reeder v. Sears, Roebuck & Co.,* 41 Wn.2d 550, 250 P.2d 518 (1952), and *Greenwood v. Olympic, Inc.,* 51 Wn.2d 18, 315 P.2d 295 (1957). The jury was so instructed.

We affirm.

HUNTER, C. J., FINLEY and HAMILTON, JJ., and DONWORTH, J. Pro Tem., concur.